## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MOHAMMAD SOHAIL SALEEM,      :      Civil No. 3:21-cv-542

             Plaintiff      :      (Judge Mariani)

             v.      :

COMMONWEALTH OF PENNSYLVANIA, :
*et al.*,      :

             Defendants      :

## MEMORANDUM

Plaintiff Mohammad Sohail Saleem ("Saleem"), an inmate who was housed at all relevant times at the State Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"), commenced this civil rights action on December 30, 2020, in the Court of Common Pleas of Centre County, Pennsylvania. (Doc. 1-1). The action was subsequently removed to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Named as Defendants are the Commonwealth of Pennsylvania, Maintenance Supervisor Hayles, Critical Incident Stress Management Chernisky, Superintendent Garman, Chief Grievance Officer Varner, the Pennsylvania Department of Corrections, and John Doe. Before the Court is Defendants' motion (Doc. 17) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Saleem failed to respond to the motion and the time for

responding has now passed.[1]  Therefore, the motion is deemed unopposed and ripe for

resolution.  For the reasons set forth below, the Court will grant the motion.  The Court will

also dismiss the action against the John Doe Defendant pursuant to Federal Rule of Civil

Procedure 4(m).

## I.    Statement of Undisputed Facts[2]

At the time of the events alleged in the complaint, August 5, 2018, Saleem was

housed at SCI-Rockview within general population on the bottom tier of CB block.  (Doc. 18

¶ 2).  Saleem does not have any experience with plumbing nor with maintenance of a

building.  (*Id.* ¶ 3).  On August 5, 2018, between approximately 9:30 a.m. and 10:30 a.m.,

Saleem used the bottom tier CB block shower.  (*Id.* ¶ 4).  After using the shower on this

date and time, Saleem alleges that he slipped and fell in the common area of the shower.

(*Id.* ¶ 5).  After slipping, Saleem allegedly landed on his back and left hip.  (*Id.* ¶ 6).  Saleem

claims that others were present at the time of his fall, but he could not identify any

_____

[1]    Saleem was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed.  (Docs. 20, 22) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

[2]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial.  *See id.*  Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statement of material facts.  (Doc. 18).  Saleem did not file a response to Defendants' statement of material facts.  The Court accordingly deems the facts set forth by Defendants to be undisputed.  *See* LOCAL RULE OF COURT 56.1.  (*See also* Doc. 20 ¶ 2; Doc. 22 ¶ 3) (advising Saleem that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

eyewitnesses—either inmate or staff member. (*Id.* ¶ 7). He testified that he was able to stand up on his own a few seconds after the fall. (*Id.*). Saleem testified that only a part of the floor of the shower common area was wet from foot traffic exiting the showers. (*Id.* ¶ 8). Saleem could not say that there was standing water in the location where he fell. (*Id.* ¶ 9). Saleem alleged that water does stay in some areas of the shower floor. (*Id.* ¶ 10). Saleem testified that the bottom tier shower on CB block was closed shortly after his fall on August 5, 2018, but he was unable to see what work was being done in the shower during this time. (*Id.* ¶ 11). An unidentified inmate worker allegedly told Saleem that the floor was painted in or around August 2018. (*Id.* ¶ 12). Saleem testified that Defendants did not cause his physical injuries. (*Id.* ¶ 13). Saleem claims that Defendants caused his mental health injuries. (*Id.* ¶ 14).

On August 16, 2018, Saleem filed grievance number 753733 complaining about the bottom tier shower on CB block on August 5, 2018. (*Id.* ¶ 15). Saleem self-reported that a Physician Assistant evaluated him on August 7, 2018, and x-rays were taken on August 8, 2018, indicating that there were no broken bones from his alleged fall in the shower. (*Id.* ¶ 16). Saleem that reported a Physician Assistant again medically evaluated him on August 10, 2018 and prescribed him pain medications. (*Id.* ¶ 17). After an initial review, staff addressed Saleem's grievance by investigating his concerns regarding the slippery floor in the bottom tier shower on CB block and taking affirmative action to ensure that the shower was safe, clean, and sanitary. (*Id.* ¶ 18). Saleem appealed this decision to the Facility

3

Manager alleging that the Initial Review Response failed to address all relief requested.  (*Id.* ¶ 19).  The Facility Manager denied the grievance appeal because the Initial Review resulted in a full investigation of Saleem's concerns, determined that the showers were never left unsafe, that Saleem had received medical attention several times, and that there was no evidence that Saleem fell nor any evidence of any injury.  (*Id.* ¶ 20).  Saleem then appealed to the Secretary's Office of Inmate Grievance Appeals ("SOIGA"), claiming he disagreed with the Facility Manager's Response and that no investigation into his concerns were completed.  (*Id.* ¶ 21).  SOIGA personnel denied Saleem's grievance because medical staff medically assessed and provided medical treatment to Saleem, and there was no evidence presented that he fell due to the repainting of the shower floor or that the "water [was] not running into the drain properly."  (*Id.* ¶ 22).  Saleem alleged that Defendant Varner was deceitful in her SOIGA review of his inmate grievance because the review decision allegedly did not discuss his issues with his medical care.  (*Id.* ¶ 23).  Saleem had the opportunity to raise all concerns and challenges to each level of the inmate grievance appeal received within the appeals system.  (*Id.* ¶ 24).  Saleem disagrees with the grievance officials' decisions.  (*Id.* ¶ 25).

Before filing inmate grievance number 753733, Saleem never filed any inmate grievance or maintenance request slip concerning the maintenance or safety of the bottom tier showers on CB block.  (*Id.* ¶ 26).  Saleem did not inform any of the Defendants of any concern with the maintenance or safety of the shower prior to his fall in the shower, nor can

he remember when, if he ever did, submit any request to staff member.  (*Id.* ¶ 27).  Saleem

alleges that various unidentified inmates notified unidentified maintenance staff members of

potential problems with the maintenance and safety of the bottom tier showers in CB block.

(*Id.* ¶ 28).  However, Saleem did not identify any individual—staff or inmate—who could

verify the veracity of this averment.  (*Id.*).

Saleem received medical care and assessment from unidentified medical personnel.

(*Id.* ¶ 29).  Saleem did not identify that any Defendant named in this litigation had

knowledge of his medical condition, medical care, or medical concerns at any time, before

or after his fall.  (*Id.* ¶ 30).

## II.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists.  *Anderson*, 477 U.S.

at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P.

56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then

the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974

F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.  The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact.  When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

### A.   Claims against the Department of Corrections and the Individual Defendants in their Official Capacities

Section 1983 provides that persons acting under color of state law may be found liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

It is well-settled that neither a state nor its agencies are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit. *Hafer v. Melo*, 502 U.S. 21, 25-27 (1991). Consequently, Saleem's claims against the Pennsylvania Department of Corrections are barred, as it is not a person within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state may not be sued in federal court pursuant to § 1983 and is not a "person" for purposes of that provision). Moreover, this Defendant is entitled to Eleventh Amendment immunity.

7

*Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (finding that the Pennsylvania Department of Corrections "shares in the Commonwealth's Eleventh Amendment immunity").

Additionally, Saleem's claims seeking monetary damages against Defendants Varner, Garman, Chernisky, and Hayles in their official capacities are barred by the Eleventh Amendment. When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. *Hafer*, 502 U.S. at 25. However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984); *Lavia*, 224 F.3d at 195-96. That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is to be imposed. *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974). Congress has not abrogated the immunity regarding Saleem's claims, nor has Pennsylvania waived this grant of immunity. *See* 42 Pa. Stat. Ann. and Cons. Stat. Ann. § 8521(b). Hence, Saleem's claims for money damages against Defendants Varner, Garman, Chernisky, and Hayles in their official capacities are barred by sovereign immunity. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).

### B.   Lack of Personal Involvement of Defendants Garman, Varner, Hayles, and Chernisky

Defendants Garman, Varner, Hayles, and Chernisky argue that Saleem fails to state a claim against they because they lack personal involvement in the alleged wrongs.  (Doc. 19, pp. 15-17).  Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  *Rode*, 845 F.2d at 1208.

It appears that Saleem seeks to hold Defendant Garman liable based upon his supervisory role of Superintendent of SCI-Rockview.  (Doc. 1-1 ¶ 7).  Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676.  Accordingly, to the extent that Saleem's

9

claims against Defendant Garman rely on a *respondeat superior* theory of liability, he is entitled to an entry of judgment in his favor.

Next, Saleem attempts to hold Defendants Garman and Varner liable based on their involvement in the grievance procedure. (Doc. 1-1 ¶¶ 6, 32, 33). This claim also fails. Courts have routinely held that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability). Because the claims against Defendants Garman and Varner are premised on their respective roles in the grievance process, they are entitled to an entry of judgment in their favor.

With respect to Defendants Hayles and Chernisky, Saleem fails to establish that they had any personal knowledge that inmates were at risk of falling in the shower and he fails to set forth any factual averments that identifies how they were involved in the alleged wrongdoing. The record is devoid of facts showing how they were involved in the alleged constitutional violations. For these reasons, Defendants' motion will be granted based on a lack of personal involvement of Defendants Hayles and Chernisky.

10

### C.   Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017).   There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates.   An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   Under the objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298).   However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Id.*   The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

### 1.   *Conditions of Confinement Claim*

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015).   "[T]he Constitution does not

mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Therefore,

conditions of imprisonment violate the Eighth Amendment only if they, "alone or in

combination . . . deprive inmates of the minimal civilized measures of life's necessities."

*See id.* at 347.  Such necessities include "adequate food, clothing, shelter, and medical

care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Thus, "extreme deprivations are

required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.  However,

"[s]ome conditions of confinement may establish an Eighth Amendment violation 'in

combination' when each would not do so alone, but only when they have a mutually

enforcing effect that produces the deprivation of a single, identifiable human need such as

food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d

Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

Saleem asserts that the shower floor was slippery because it was recently painted

and uneven.  (Doc. 1-1 ¶¶ 15-18).  At worst, such claims may amount to negligence, which

is insufficient to state a plausible Eighth Amendment violation.  *See Bacon v. Carroll*, 232 F.

App'x 158, 160 (3d Cir. 2007) (finding allegations that an inmate slipped and fell on a wet

floor amounted "merely to negligence" and therefore were "not actionable under § 1983");

*Richie v. Jones*, No. 13-0054, 2014 WL 4058951, at *5 (M.D. Pa. Aug. 14, 2014) ("Plaintiff

has failed to state an Eighth Amendment conditions of confinement claim for failing to

adequately affix the shower floor with slip guards or rubber mats . . . [the allegation]

indicates negligence at worst, but negligence does not rise to the level of a constitutional violation.").

With respect to the subjective element of the deliberate indifference standard, the record reflects that Saleem did not notify the Defendants about the safety of the showers prior to his fall. Saleem testified that unidentified inmates informed him that they reported to unidentified prison staff about concerns with the shower. (Doc. 18-1, pp. 45-46, Deposition of Mohammad Sohail Saleem, Notes of Transcript, 43:11-25, 44:1-25). There is no evidence demonstrating that the named Defendants were actually aware of a risk of harm to Saleem, and they chose to ignore that risk.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Saleem has wholly failed to meet this burden in that he neglected to oppose Defendants' motion for summary judgment. Despite his failure to oppose the motion, it is clear that there are no disputed facts from which a reasonable jury could conclude that Defendants deprived Saleem of the "minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834, for impermissible reasons, or that his health and safety were at risk, *see Hassine v. Jeffes*, 846 F.2d 169, 174-75 (3d Cir. 1988). Therefore, Defendants are entitled to summary judgment on this claim.

### 2. *Deliberate Indifference to Serious Medical Needs*

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment

based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson*, 501 U.S. 294. Additionally,

prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

Assuming *arguendo* that Saleem's injuries rise to the level of a serious medical condition for purposes of the Eighth Amendment analysis, the Court must determine whether he has pled a deliberate indifference to that need.  Saleem asserts that Defendants exhibited deliberate indifference by rendering inadequate medical care.  (Doc. 1-1 ¶¶ 19-25).  However, it is undisputed that Saleem received medical treatment for his injuries.  The record confirms that Saleem fell on August 5, 2018, he was evaluated by medical staff on August 7, 2018, x-rays were ordered on August 7, 2018, he underwent x-rays on August 8, 2018 (which revealed no broken bones), and was reevaluated on August 10, 2018 and prescribed pain medication and a muscle rub.  Any brief delay in undergoing medical

treatment does not rise to the level of deliberate indifference and thus does not violate the
Eighth Amendment.  *See Rhines v. Bledsoe*, 388 F. App'x 225, 228 (3d Cir. 2010) (holding
that the failure to immediately order an MRI upon prisoner's request does not demonstrate
deliberate indifference).  The record is devoid of any facts showing that Defendants acted
with deliberate indifference towards a serious medical need.  Moreover, Saleem has failed
to oppose Defendants' motion for summary judgment and failed to present any evidence
beyond his mere disagreement with medical treatment.  Nor can the Court discern any such
deliberate indifference from the record.  Because Saleem has failed to identify any official
conduct that exhibits deliberate indifference to his health, he is not entitled to relief on this
claim.

     **D.**     **Fourteenth Amendment Claims**

          **1.**     ***Substantive Due Process***

     Saleem's substantive due process claim is duplicative of his Eighth Amendment
claim and is barred by the "more specific provision rule."  In adopting the "more-specific-
provision-rule" established in *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998),
the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific
constitutional provision . . . , the claim must be analyzed under the standard appropriate to
that specific provision, not under the rubric of substantive due process.' *United States v.
Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior
holding in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))."

*Betts*, 621 F.3d at 260-61.  Saleem's slip and fall claim and medical care claim fit squarely within the Eighth Amendment claim.  Thus, the more-specific-provision rule forecloses any substantive due process claim.

### 2.    *Procedural Due Process*

Saleem asserts that his Fourteenth Amendment procedural due process rights were violated in the context of the prison grievance procedure.  (Doc. 1-1 ¶ 35).  Such a claim has no merit because prisoners do not have a constitutionally protected right to prison grievance procedures.  *Rivera*, 346 F. App'x at 751; *see also Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (holding the alleged obstruction of grievance procedures by a prison official did not give rise to an independent § 1983 claim).  Nor do they have a liberty interest protected by the due process clause in the grievance procedures.  *See Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013), *citing Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).  In any event, Saleem was not deprived of any process.  He acknowledges that he availed himself of the prison grievance procedure and, although he may not agree with the outcome of his grievances, his complaints were aired in the designated forum and assessed by the appropriate officials.  Therefore, Defendants' motion will be granted with respect to the Fourteenth Amendment procedural due process claim.

### E.      Accardi Doctrine

In the complaint, Saleem references the doctrine established in *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).  (Doc. 1-1 ¶ 42). The *Accardi* doctrine is the "long-settled principle that rules promulgated by a *federal* agency that regulate the rights and interests of others are controlling upon the agency." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010) (emphasis added).  There are no federal agencies named in this action and Saleem's reliance on the *Accardi* doctrine is entirely misplaced.  Defendants' motion will be granted with respect this claim.

### F.      State Tort Law Negligence Claim

Finally, Defendants contend that to the extent that Saleem's reference to negligence in his complaint is an attempt to assert a state law intentional tort claim, said claim is barred by the doctrine of sovereign immunity.[3]  (Doc. 19, pp. 27-29).  With respect to any pendent state law claims, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Aldinger v. Howard*, 427 U.S. 1, 9 (1976).

---

[3]      State sovereign immunity is not waived when removing an action to federal court.  *Lombardo v. Pennsylvania, Dept. of Public Welfare*, 540 F.3d 190, 198 (3d Cir. 2008) ("the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability").

Title 42 Pa.C.S.A. § 8522(b) sets forth a list of instances for which the

Commonwealth of Pennsylvania has waived sovereign immunity, none of which apply

here.[4]  As such, Defendants are entitled to summary judgment as a matter of law on any

alleged state law tort claim.

## IV.   Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The John Doe Defendant was named in the complaint that was filed

on December 30, 2020 and, to date, has not been identified or served in this case.  The

Court must engage in a two-step process in determining whether to dismiss the non-served

Defendant or grant Saleem additional time to effect service.  "First, the district court should

determine whether good cause exists for an extension of time.  If good cause is present, the

district court must extend time for service and the inquiry is ended.  If, however, good cause

does not exist, the court may in its discretion decide whether to dismiss the case without

prejudice or extend time for service."  *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298,

---

[4]   The nine exceptions are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody
or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and
other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National
Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S.A. § 8522.

1305 (3d Cir. 1995).  Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules.  *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*  Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service.  *Id.*

In the present matter, Saleem failed to establish good cause.  After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Saleem that the action against the John Doe Defendant was subject to dismissal and directed him to show cause why the action against this Defendant should not be dismissed pursuant to Rule 4(m).  (Doc. 7).  In response to the show cause order, Saleem explains that he had limited access to the law library and previously contracted COVID-19, which hindered his ability to properly research the identity of the John Doe Defendant.  (Doc. 9).  Saleem's *pro se* status is not good cause to excuse his failure to timely identify or serve the John Doe Defendant.  *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004).  Based upon the lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Saleem failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to

order that service be made within a specific time.  *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m).  It is Saleem's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.  (*See* Doc. 7).

In light of Saleem's lack of good faith effort to identify or serve the John Doe Defendant despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-identified, non-served Defendant will be dismissed from this action.

## V.   Conclusion

The Court will grant Defendants' motion (Doc. 17) and enter judgment in their favor. The Court will also dismiss the action against the John Doe Defendant pursuant to Federal Rule of Civil Procedure 4(m).

A separate Order shall issue.



Robert D. Mariani
United States District Judge


Dated: May _4_, 2022

22